UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

The Estate of Jon Leon Watson,
by and through its Administrator
Ad Prosequendum, Helen Ray Lloyd
and Helen Ray Lloyd, in her own
right,

                  *Plaintiffs,*

Cumberland County, Warden Robert
Balicki, in his individual capacity
And John Doe Corrections Officers
1-10 (fictitious individuals) in
their individual capacities, &
CFG Health Systems, LLC

                  *Defendants.*

Case No. 1:16-CV-06578

**MOTION for RELIEF from JUDGMENT PURSUANT to FED.R.CIV.P. 60(b)**

**Plaintiffs' Motion for Relief from Judgment Pursuant to Fed.R.Civ.P. 60(b)**

Pursuant to F.R.Civ.P. 60(b), Plaintiffs move the Court for an Order granting relief from its Judgment, dated January 9, 2020, granting summary judgment against Plaintiffs and in favor of Defendants Cumberland County, Warden Balicki, and CFG. On January 14, 2021, the Department of Justice ("DOJ") Civil Rights Division released the report of its Investigation of the Cumberland Jail (Bridgeton, New Jersey). The DOJ Report (**Exhibit "A"**) provides powerful new evidence, previously unavailable, of the liability of the defendants in this case. The DOJ Report goes beyond the findings and conclusions of Plaintiffs' experts, Jeffrey Schwartz, Ph..D. and Lawrence Guzzardi, M.D., and provides independent affirmative proof of the Due Process deliberate indifference claim in this case. In accordance with Fed.R.Civ.P. 60(b)(6), Plaintiffs respectfully

1

request that the District Court grant relief from its January 9, 2020 Order granting Summary Judgment in favor of Defendants Cumberland County, Warden Balicki, and CFG.

The Motion is supported by the Memorandum of Law incorporated below.

## I. Procedure for Seeking Relief in the District Court

This Court has authority to consider the motion under Fed.R.Civ.P. Rule 62.1(a), which states in relevant part: "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."

The Committee Notes to the rules set forth the reasons for the request for remand:

> . . . a motion may present complex issues that require extensive litigation and that may either be mooted or be presented in a different context by decision of the issues raised on appeal. . . The district court is not bound to grant the motion after stating that the motion raises a substantial issue; further proceedings on remand may show that the motion ought not be granted.

Accordingly, we respectfully request that the Court review the Motion and, if it determines it has merit sufficient for full consideration, order the movant to inform the Third Circuit pursuant to F.R.Civ.P. Rule 62.1(b) that this Court would grant the Motion *or that the Motion raises a substantial issue that should be addressed by a remand* of the case to this Court. If the Circuit Court remands the case, this Court will have authority to rule on the merits of the motion.

## II. Legal Argument

This Motion raises a substantial issue regarding the Court's ruling granting summary judgment on all claims against all Defendants. This Court should follow the procedures set forth in Rule 62.1 to ensure that the Plaintiffs' claims are fully and properly addressed on the merits.

2

Fed. R. Civ. P. 60, provides in relevant part:

(b) Grounds for Relief From a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

\* \* \* \* \*

(6) for any reason that justifies relief.

Rule 60(b)(6) supports the grant of relief upon the discovery of new evidence, not available at the time of the judgment challenged which, because it is not merely impeaching or cumulative, would "probably produce a different result." *See Fields v. City of Chicago*, 981 F.3d 541 554-555 (7th Cir. 2020) (granting relief under Rule 60(b)(2) on these grounds). When a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion. If the district court determines that the motion is meritless, the court may deny the motion. At that stage the Rule 60(b) issue can be raised on appeal and consolidated with the appeal from the underlying order. If the District Court is inclined to grant the motion, it should issue a memorandum that would advise the Circuit Court of its position. The movant can then request a limited remand from the appellate court for that purpose. *See Fobian v. Storage Technology Corporation*, 164 F.3d 887 (4th Cir. 1999).

The grounds for this motion are provided by the DOJ Report which was recently served on Cumberland County with factual findings by the U.S. Department of Justice regarding suicides at the County Jail, the same subject matter as presented by this litigation. The DOJ Report is admissible pursuant to the Fed.R.Evid. 803(8) and, as newly discovered evidence, provides independent grounds for denying the motions for summary judgment.

Rule 803(8), F.R.Evid. provides:

Public Records. A record or statement of a public office if:

(A)   It sets out:

3

>   (iii.) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation
>
> (B) The opponent does not show that the source of information or other Circumstances indicate a lack of trustworthiness.

The DOJ Report involves an investigation that was conducted jointly by the Special Litigation Section of the Department of Justice's Civil Rights Division and the U.S. Attorney's Office of the District of New Jersey. The investigation involved the work of three expert consultants in Correctional Operations and Mental Health Care, a four-day on-site review of the Jail CCJ officials and approximately 3,000 documents.[1]

According to the DOJ Report, the investigation focused on whether the CCJ complied with its obligations under the Constitution by taking adequate measures to provide mental health care and to prevent inmate suicides, for the period 2014 to December, 2020. This time period includes the case at bar, as Mr. Watson was incarcerated at the Cumberland County Jail from May 18, 2016 to June 3, 2016.

In Point A of the Report, the DOJ determined that **"CCJ Staff Acted with Deliberate Indifference to Inmates Experiencing Opiate Withdrawal and Particularly Vulnerable to Suicide by Failing to Provide Medication-Assisted Treatment."** DOJ Report, 6 (emphasis in original). The DOJ made the following factual determinations:

> "For years, the CCJ acted with deliberate indifference to inmates' serious medical needs by categorically denying MAT [Medically Assisted Treatment] to inmates with Opioid Use Disorder. Indeed, the CCJ failed to provide MAT until 2020 – nearly two years after our investigation began. By failing to provide adequate medical care necessary to treat inmates' Opioid Use Disorder, the CCJ exhibited deliberate indifference to inmates' serious medical and mental health needs. *See Woloszyn*, 396 F.3d at 320, *Palakovic*, 845 F.3d at 222 (citing *Estelle*, 492 U.S. at 104); *Pesce v. Coppinger*, 355 F. Supp. 3d 35, 47-48 (D. Mass. 2018).

---

[1] In discovery in the instant case, the defendants did not disclose the fact of the DOJ investigation, nor did they provide as a separate part of discovery a log or copies of precisely what was provided to the DOJ in terms of relevant documents.

4

Individuals with Opioid Use Disorder often experience debilitating symptoms when undergoing opioid withdrawal – including uncontrolled pain and psychological distress – that may trigger suicide ideation, especially during the first week of incarceration, if not property treated. At the CCJ, inadequate treatment of opiate withdrawal contributed to several inmates' suicides. With respect to the seven suicides at the CCJ since 2014, at least six of those inmates were opiate users, and the evidence uncovered in our investigation suggests that those six inmates were experiencing opiate withdrawal at the time of their suicides." *Id.*

The DOJ identified six inmates who had used opiates at the time they entered the jail, and who, as a matter of policy and practice, were denied MAT. Further, the DOJ determined that because MAT is the standard of care to treat these disorders and prevent suicides, categorically denying MAT to inmates with Opioid Use Disorder establishes a Constitutional deprivation of the right to adequate medical care. DOJ Report, 9. One of these inmates, identified as "D.D." at DOJ Report, 10, is plaintiffs' decedent, Jon Leon Watson. As described in the DOJ's report:

> "The death of D.D.: D.D., a 43-year-old inmate who reported opiate use upon admission to the jail, committed suicide on June 3, 2016, roughly two weeks after entering the jail. Specifically, D.D. reported taking Suboxone-an approved treatment for opiate withdrawal to treat his previous use of Percocet. CCJ staff placed him on suicide watch, but they did not continue his use of Suboxone or provide any other MAT to treat his opiate use. CCJ staff observed symptoms typical of opiate withdrawal, including depression, anxiety, distress, lightheadedness, seizures, and suicidal ideation. Yet, not only did they fail to prescribe MAT, they barely provided any mental health treatment. His vital signs were not checked, though even CCJ's inadequate protocol requires this daily, and he received no mental health treatment other than antipsychotic medication while in a suicide watch cell for three days. Nothing about his treatment was modified even after he exhibited signs of withdrawal." DOJ Report, 10.

Significantly, the DOJ Report recognized and provided expert opinion support both for the findings regarding Mr. Watson and for more general findings that address the critical issue in this case of deliberate indifference by reason of policy and practice:

> 1. Opioid Use Disorder is Prevalent Among Those Incarcerated;

5

2. Opioid Withdrawal, Left Untreated, Has Serious Medical Consequences for Inmates Including Increased Risk of Suicide;

3. Medication-Assisted Treatment is the Standard of Care for Treating Opiate Withdrawal; and

4. The CCJ's Inadequate Treatment of Opioid Withdrawal Increases the Risk of Harm and Likely Contributed to Suicides at the CCJ. DOJ report, 6-11.

In Point B. of Conditions Identified, the DOJ Report determined that, **"Poor Screening, Classification, and Suicide Prevention Protocols Demonstrate the CCJ's Deliberate Indifference to Inmates at Heightened Risk of Self-Harm**. DOJ Report, 11 (Emphasis in original). In this section, the DOJ made the following findings supported by evidence and expert opinions:

1. The CCJ's Screening Process is Ineffective in Identifying Inmates with Mental Illness and Risk of Suicide;

2. CCJ Staff Fails to Properly Classify and House Inmates with Mental Illness and a Risk of Suicide;

3. The CCJ's Suicide Watch Policies and Practices Expose Prisoners to Harm
   a. Unnecessarily Harsh Conditions on Suicide Watch
   b. Inadequate Mental Health Treatment on Suicide Watch
   c. Inadequate Supervision of Inmates on Suicide Watch

DOJ Report, 12-16.

In Point C. of Conditions Identified, the DOJ reported **Systemic Deficiencies in CCJ's Mental Health Services Continue to Place Prisons at Risk of Harm**. DOJ Report, 15 (Emphasis in original). The DOJ investigation found that "Systemic Deficiencies in CCJ's Mental Health Services Continue to Place Prisoners at Risk of Harm." The DOJ Report carefully documented the following conditions, practice and policies that caused the unconstitutional conditions at the Jail:

1. Inadequate Mental Health Staffing;

2. Haphazard and Deficient Treatment of Prisoners with Mental Illness;

6

3. Inappropriate Restraint of Prisoners in Behavioral Health Emergencies;

4. Minimal Access to Higher Levels of Mental Health Care;

5. CCJ Policy Denies Mental Health Professionals Clinical Autonomy;

6. Poor Coordination between Mental Health and Custody Staff; and

7. Deficient Quality Assurance and Contract Oversight.

DOJ Report, 16-20.

The DOJ identified eighteen remedial measures that it determined were necessary under the Constitution to remedy the ongoing violations of the rights of inmates, who like Mr. Watson, have been denied necessary medical care and prevention of suicide measures. These remedial measures address the numerous deficiencies in the medical care for inmates that Mr. Watson suffered, and which caused his death by suicide. As stated in the DOJ Report, "[T]he Department has reasonable cause to believe that CCJ has engaged in a pattern or practice of violating rights protected under the Eighth and Fourteenth Amendment because it fails to provide prisoners with constitutionally adequate and mental health care or to take reasonable measures to prevent inmate suicides." DOJ Report, 20-22.

Under F.R.Evid. 803(8) governmental investigatory reports are presumed trustworthy and therefore are admissible as an exception to the rule against hearsay. This presumption of trustworthiness is based on the determination that public officials perform their duties properly and in good faith. The Supreme Court has given a broad reading to the "factual findings" provision of Rule 803(8), including in this definition legal determinations. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988). Further, the Rule has been regularly applied in civil rights and other cases. *See, e.g., Shepherd v. Dallas Cy.*, 591 F.3d 445, 457-58 (5th Cir. 2009); *Gentile v. County of Suffolk*,

7

129 F.R.D. (E.D.N.Y. 1990), aff'd, 920 F.2d 142 (2d Cir. 1991) (opinion of District Court Jack Weinstein finding admissible a New York State Investigatory Report on police misconduct in the County police department.

In *Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016), the plaintiff, a pretrial detainee, alleged in his §1983 complaint that while confined in the Cook County Jail he did not receive adequate medical care for his serious injury to his hand and wrist, which resulted in permanent damage. The complaint included a municipal liability claim based on allegations that the county jail had an official policy and widespread custom of failing to establish and adequate health care system for the inmates.

As in the instant matter, the DOJ, pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. §1997, engaged in an investigation of the health care at the Cook County Jail, and issued a report finding both systemic deficiencies in the jail's health care and the sheriff's notice of these deficiencies. "The investigation found systemic flaws in the jail's scheduling, record keeping, and grievance procedures that produced health care below the minimum requirements of the United States Constitution." *Daniel*, 833 F.3d at 730-31.

The district court allowed the plaintiff to use the report only to show that the sheriff was on notice of the widespread problems described in the report, but not for the truth of the underlying factual findings. On appeal, the Court ruled that the report satisfied the Rule 803(8) investigatory report hearsay exception, thus mandating admissibility for the factual findings and conclusions, under the ACN trustworthiness/factors.

The same result is mandated in this case, as the factors that the Rule and the courts consider in determining trustworthiness weigh strongly in favor of the admissibility of the DOJ Report.

1. **Timeliness:** Although the ACN refers to the "timeliness of the investigation, *Daniel* refers to the timeliness of the report. Under either approach, it is clear that the DOJ's Report on the Jail, which encompasses the period 2014 to December, 2020, and made public on January 14, 2021, is timely.

2. **Expertise:** The ACN lists as a pertinent trustworthiness factor the "special skill of the official." The Court in *Daniel* found it "difficult to imagine an official investigation with more expertise of facial credibility. The [DOJ] relied on a team of experts in medicine, corrections, and medical administration." *Daniel*, 833 F.3d at 741. Here the DOJ's report resulted from an investigation conducted jointly by the same Special Litigation Section of the Department of Justice's Civil Rights Division and the U.S. Attorney's Office of the District of New Jersey. It was assisted by three expert consultants in Correctional Operations and Mental Health Care. Two of the experts are former high-ranking corrections officials who have provided expert opinions on correctional issues to other agencies. The other expert is a board-certified psychiatrist with significant experience in correctional settings who has also served as an expert on numerous correctional matters. Additionally, the investigation included a four-day on site review of the CCJ and a review of more than 3000 documents relevant to the DOJ's investigation. DOJ Report, 1-2.

3. **Procedures:** Courts consider the procedures used to conduct the investigation and whether a public hearing was held. Importantly, while the fact of a hearing is added weight, it is not a pre-requisite for admissibility. In *Daniel*, for example, the DOJ "provided a draft [of the report] to Cook County officials [and afforded them] an opportunity to respond." *Id.* at 741. The Circuit Court treated the provision of the draft

9

of the report and an opportunity to respond as an effective substitute for a hearing. *Id.* The DOJ's Report on the Jail was similarly provided to the Cumberland County Commissioner Director consistent with CRIPA's statutory requirements. See letter of the U.S. Department of Justice Civil Rights Division and United States Attorney's Office District of New Jersey, attached hereto as Exhibit "B."

4. **Motivational Concerns:** The ACN refers to "possible motivational problems suggested by *Palmer v. Hoffman*, 318 U.S. 109 [1943]," i.e., whether the report was prepared for the purpose of litigation. If it was, then its reliability is likely suspect. The Court in *Daniel* concluded that the fact that the U.S. Attorney General had statutory authority to bring suit against Cook County did not mean that the DOJ report was prepared for the purpose of or in anticipation of litigation and "suffers from "motivational problems..." *Id.* at 742:

> The report was not prepared for purposes of litigation. It was prepared as part of an investigation that [DOJ] carried out pursuant to its duties under [CRIPA]. Litigation [commenced by the U.S. Attorney General] could follow, of course, depending on the outcome of the investigation and the response of the institutional officials to the findings......But litigation was not the point of the investigation or report. The mere fact that "the Attorney General may initiate as lawsuit" against the Jail if a resolution is not otherwise reached to address its unconstitutional conditions does not mean that the preliminary investigation was conducted as anticipatory fact-finding for a potential lawsuit. If the law were otherwise, many official investigative findings would be inadmissible.

*Id.* at 741 (emphasis added).

The same holds true in this case. The DOJ has not filed suit against Cumberland County; to the contrary, the notice to Cumberland County states that the intention of the DOJ is to resolve the matter of its investigation through a co-operative approach. As in *Daniel*, there is no evidence that the report was prepared for the purpose of or in anticipation of litigation.

10

The DOJ Report in *Daniels* was relevant on the plaintiff's claim and would likely be given "considerable weight" by the trier-of-fact since the liability claim required proof of "systemic failings that reflect official deliberate indifference to the health needs of inmates." *Id.* at 742. This demanding standard "is difficult, time-consuming, and expensive for most private plaintiffs to meet." *Id.* As Judge Weinstein determined in *Gentile, supra*, the *Daniel's* Court properly noted that the DOJ findings "would be difficult to replicate through ordinary processes of litigating individual private cases." *Id.*

On summary judgment in this case, this Court was without the exhaustive investigative findings of the DOJ that are central to the core claims made by plaintiffs. According to this Court, the plaintiffs' experts did not present sufficient evidence or opinions to meet the *Monell* standard for liability.[2] We respectfully disagree with that determination but, in any event, the DOJ's

---

[2] In summary, plaintiffs expert Dr. Jeffrey Schwartz asserted:

Mr. Watson was a long-time alcohol and drug addict, but he had friends and family in the community and his death in the Jail was almost certainly preventable.

During the period of approximately two- and one-half years, from mid-2014 to early 2017, CCJ had six inmate suicides. That is a suicide rate that is more than ten times the national average for Jails, and may be the highest documented rate of suicides recorded for a medium sized or large jail over a comparable time period. It is the highest of which I know. As this suicide cluster developed, CCJ and its contract health and mental health care provider, CFG Health Systems ("CFG"), did nothing substantial to learn from the earlier suicides or to make significant changes in an effort to prevent future suicides. Thus, they continued to occur.

When Mr. Watson was booked into the CCJ, he acknowledged that he had recently taken a large amount of alcohol and heroine; withdrawal was a key issue. He also told the intake staff that he had a serious mental health history and he exhibited symptoms of psychological disorder during intake. He received no mental health treatment except for psychotropic medications and his psychological condition deteriorated dramatically during his time in the Jail before his suicide. Instead of providing treatment to Mr. Watson, CCJ instead punished him for being mentally ill. Mr. Watson was pepper sprayed at least twice, placed in a restraint chair on at least four different occasions and kept there for hours in direct violation of the

11

investigation has produced new, affirmative, and independent evidence of Constitutional violations arising from policies and practices that reflect gross deliberate indifference towards the health and safety of inmates, including Mr. Watson. Under Rule 60(b)(6) this evidence is not merely impeaching or cumulative, but rather strongly independent of other evidence before the Court and which would probably lead to a denial of summary judgment for the defendants.

IV. **Conclusion**

The DOJ found that the rights of those at the Jail who were vulnerable to suicide were violated, as we claim in this lawsuit, by the operation of multiple and systemic deficiencies in health and mental health policies and practices. The death of Mr. Watson was the result of these official failures, all showing deliberate indifference.

Therefore, in accordance with Fed.R.Civ. P. 60(b)(6), Plaintiffs respectfully request the Court to reconsider its Order granting Summary Judgment in favor of the Cumberland County, Warden Balicki, and CFG, and consistent with Rule 62.1 issue a memorandum finding merit in this Motion for Third Circuit remand of the pending appeal.

---

manufacturer's recommendations for that equipment and well accepted correctional practices.

Report of Jeffrey Schwartz, Ph.D. at 1,

Plaintiffs' expert Lawrence Guzzardi, M.D. asserted that the suicide was the result of the failures in the treatment of Mr. Watson. He should have been seen and treated by qualified medical personnel, given his psychotic condition which was exacerbated by drug and alcohol withdrawal and which were exacerbated precipitated by drug withdrawal and punitive actions taken against Mr. Watson for mental health behaviors that were beyond his control."
Report of Lawrence Guzzardi, M.D., at 7-8.

Dated this 1st day of February, 2021.

                Respectfully submitted,

                **LAW OFFICES OF CONRAD J. BENEDETTO**

        BY: _____
                  CONRAD J. BENEDETTO, ESQ.
                  Attorneys for Plaintiffs